IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD E. TURNER,                                CV 07-6154-MA

        Plaintiff,                         OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

    **RICHARD F. MCGINTY**
    PO BOX 12806
    Salem, OR  97301
    (503) 371-9636
        Attorney for Plaintiff

    **KARIN J. IMMERGUT**
    United States Attorney
    **BRITANNIA I. HOBBS**
    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902
    (503) 727-1053

    **RICHARD M. RODRIGUEZ**
    Special Assistant United States Attorney
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA  98104-7075
    (206) 615-3748

        Attorneys for Defendant

**MARSH, Judge:**

    The matter before the Court is Plaintiff, Donald Turner's,

Social Security Complaint, seeking judicial review of a final

1- OPINION AND ORDER

decision of the Commissioner of Social Security denying his

application for disability insurance benefits (DIB) under Title

II of the Social Security Act.  42 U.S.C. §§ 405(g) and

1383(c)(3).  For the reasons that follow, the Commissioner's

decision is AFFIRMED and this case is DISMISSED.

### <u>BACKGROUND</u>

Turner applied for disability on November 4, 2003, alleging

that he became disabled April 8, 1997 due to degenerative disc

disease of the cervical-lumbar spine, status-post cervical and

lumbar spine fusion surgeries, chronic pain, and depression.

Turner was 38 years old at that time.  He last worked as a

registered nurse (RN) on April 1, 1997.  Turner's nursing license

expired in June 1997 after Turner went to prison on a drunk-

driving vehicular assault conviction.  Pursuant to the terms of

his supervised release, Turner completed a Network Technology

certificate program at Chemeketa Community College in August

2002.  While he was a student at Chemeketa Turner worked as a

Computer Lab Technician approximately 12 hours per week.  This

job ended when he graduated in August 2002.

Turner's Title II insurance lapsed on September 20, 2003.

Thus, in order to be entitled to DIB Turner had to prove he

became disabled sometime between April 8, 1997 and September 30,

2003 (the relevant period of review).  *See Tidwell v. Apfel*, 161

F. 3d 599, 601 (9th Cir. 1998).

2- OPINION AND ORDER

Turner's application was denied initially and upon reconsideration. A hearing was held at his request before an Administrative Law Judge (ALJ), at which Turner was represented by an attorney. On September 25, 2006 the ALJ found Turner not disabled. This became the Commissioner's final decision when the Appeals Council declined Turner's request for review. *See* 20 C.F.R. § 422.210.

On appeal to this Court, Turner alleges the ALJ erred by: (1) by failing to include all of Turner's functional limitations in the residual functional impairment (RFC) assessment; (2) wrongly rejecting Turner's treating physician's opinions; (3) failing to provide legally sufficient reasons for rejecting Turner's credibility: (4) failing to consider lay witness testimony in the record; (5) relying on evidence "beyond the record," from the State Board of Nursing, showing Turner was undergoing disciplinary action at the time he claims to have become disabled. I address these claims, below, in the order they arise under the Commissioner's sequential evaluation.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3- OPINION AND ORDER

impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **ALJ'S FINDINGS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v.*

*Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  The
claimant bears the burden of proof at steps one through four.
*See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each
step is potentially dispositive.

Here, at step one, the ALJ found that Turner had not engaged
in substantial gainful activity since his alleged onset of
disability, notwithstanding that he was paid for his student work
as a Computer Lab Technician.  *See* 20 C.F.R. § 404.1520(b).

At step two the ALJ found that Turner had degenerative disc
disease of the cervical and lumbar spine, status-post cervical
and lumbar spine fusion surgeries, chronic pain, and a history of
narcotic-opiate prescription drug and alcohol abuse.  *See* 20
C.F.R. § 404.1520(c).

At step three the ALJ found that Turner's impairments did
not, singularly or in combination, meet or equal the requirements
of any listed impairment, codified at 20 C.F.R. Part 404, Subpart
P, Appendix 1, considered so severe as to automatically
constitute a disability.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),
(d).

The ALJ determined that Turner had the residual functional
capacity (RFC) to lift and carry 10 pounds frequently and 20
pounds occasionally; to sit for 6 hours total in an 8-hour
workday with normal breaks; and to push and pull 10 pounds
frequently and 20 pounds occasionally.  The ALJ also determined

that Turner was precluded from overhead reaching, and climbing anything other than stairs. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 404.1567.

At step four the ALJ found that Turner could no longer perform his past relevant work. 20 C.F.R. § 405.1520(a)(4)(iv).

At step five the ALJ found that Turner retained the RFC to perform work existing in significant numbers in the national economy, such as being a "companion," a food assembly worker, and a surveillance systems monitor. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). Accordingly, the ALJ found that Turner was not disabled at any time before his date last insured.

## DISCUSSION

### I.  Turner's Credibility

According to Turner the ALJ wrongly discredited his "allegations of pain, duration of pain, and limitations from pain," on account of Turner's "memory problems." Turner's argument mischaracterizes the exchange he had with the ALJ at the hearing by stating that he "attempted to explain his memory problems, and based on the ALJ's demeanor, correctly foretold the end result when he stated, 'I don't know. I just have a bad feeling I'm going to be penalized' for not remembering."

As the Commissioner points out, the transcript repudiates Turner's claim that the ALJ rejected his subjective reports

because of Turner's "confusion over dates."  The colloquy begins
with the ALJ interrupting Turner's counsel after Turner testified
that he stopped working in April 1997 due to back problems
related to a car accident.  The ALJ told Turner that according to
the "State Board of Nursing" Turner was "undergoing disciplinary
action" in April 1997.  Turner then explained that after his car
accident he was in a lot of pain so he stole discarded pain
medication from his employer and was fired.  According to Turner,
he completed a rehabilitation program in order to keep his
nursing license, began working for a different employer, and was
caught stealing pain medication a second time.  Turner testified
that shortly thereafter he was in an automobile accident while
driving under the influence and was subsequently sentenced to
prison.  As a result of these events, Turner reportedly lost his
nursing license.  After Turner finished explaining these events,
the ALJ commented that it appeared Turner had been less than
fully candid about the reason he stopped working on the date he
alleges he became disabled.  Turner than asked if his wife could
testify to "back him up" and the following exchange ensued:

> ALJ: Okay.  The dates is [sic] not the issue.  I think
>      you're missing my point.  The dates is [sic] not an
>      issue.
>
> P:   See, what I'm afraid of right now is all this is – –
>      all this time has gone by and – –

ALJ:  Well, we have a record.  We have a file.  I mean, don't be concerned that it's been a lot of years.  I mean, we have a record.  The dates are important, however, because you claim you became disabled in 1999, I believe – – I'm sorry, 1997.  You said you became disabled April 9, 1997.  Your date last insured is September 30, 2003.  I need to focus on that period.  That's the only reason that time was important.  But we have all the medical records from that period.

P:  Okay.  See, what I'm concerned about though is that you're thinking that I'm hiding something by me not getting the dates right and – –

ALJ:  No.

P:  – – and --

ALJ:  That is not what I said.  I felt you were hiding something by not disclosing to me that you stopped working as a nurse in part because you were having problems with the State Board of Nursing and you have pending criminal charges.

P:  Okay.

ALJ:  It didn't appear that you were going to disclose that in answer to the question your attorney asked you.  That's why I stepped in and I brought it forth.  I was not entirely clear of what your answer should be.  All I knew is that it says discipline from the state.

P:  Okay.

ALJ:  And now that you've testified, it's clear to me there was discipline and I understand now why you, at least in part, were out of the workplace.  You were in prison during part of this time.

P:  Right

    Thus, the ALJ rejected Turner's credibility in part because

of his failure to volunteer that his drug and alcohol abuse

8- OPINION AND ORDER

history was "the primary cause of his stopping work."  However, the ALJ also pointed to several other clear and convincing reasons to reject Turner's subjective reporting.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)(ALJ must give clear and convincing reasons to discredit a claimant's subjective symptoms that could be caused by one of his medically determinable impairments).

The ALJ cited Turner's reluctance to acknowledge "that he was able to successfully attend college courses as well as work as a computer lab assistant from June 2001 through August 2003, at 3-to-4 hours a day" evinced a lack of candor.

Second, the ALJ found Turner's reporting about his drug and alcohol use to be internally inconsistent, and inconsistent with the medical records.  Turner contemporaneously reported that he did not drink regularly, and that he was a "heavy drinker."  In July 2001 Turner reported to Rick Cook, M.D., that he had been "clean and sober from drugs and alcohol for four years." Apparently Dr. Cook doubted the veracity of Turner's reports because he began ordering urinary analysis, which Turner always waited at least a week after the order to complete.  By February 2003 Turner stopped seeing Dr. Cook.  In July 2004 Turner's blood-alcohol level was three times the legal limit to drive when he fell from a ladder, rupturing his spleen and breaking several

ribs.  The attending physician wrote in his chart notes, "obviously uses alcohol on a regular basis."  Yet Turner testified at the hearing that he had only had a few beers with his father-in-law on this occasion.  Throughout the relevant period of review Turner was taking multiple prescription pain and sleep medications, including medication that was not prescribed to him.

Third, the ALJ found that Turner failed to follow prescribed treatment, such as Dr. Brumbaugh's prescription to attend a "Chronic Pain Program."

Fourth, the ALJ found Turner's failure to tell Carey Yuen, M.D. about his history of addiction when he began treating with Dr. Yuen, in addition to incorrectly reporting the current dosage of medications Turner was taking, was indicative of drug-seeking behavior.  Moreover, Turner told Dr. Yuen that he was "on disability" even though Turner testified he has never received any disability benefits.

Thus, contrary to Turner's claim, the ALJ did not reject his pain reports because Turner was confused about dates, but because Turner had not been candid with the Social Security Administration about his work history and the reason he stopped working as a nurse.  Moreover, the record showed that Turner did not seek any medical treatment while in prison for over a year

10- OPINION AND ORDER

and yet as soon as he was released from prison he resumed his
abuse of alcohol and prescription drugs by shopping for doctors
who would continue to prescribe narcotics to him, notwithstanding
his history of addiction, which Turner did not always report.

**II.  Treating Physicians' Opinions**

According to Turner the ALJ failed to properly evaluate the
opinions of Turner's treating physicians, whose opinions were
entitled to "controlling weight."

The standards employed by the Commissioner when evaluating
medical evidence in disability cases are found at 20 C.F.R.
§ 404.1527(d).  The Commissioner weighs the opinion of a treating
physician by considering the following factors: (1) the length of
the treatment relationship and the frequency of examination, (2)
the nature and extent of the treatment relationship, (3) the
degree of supporting explanations and evidence, (4) consistency
with the record as a whole, (5) whether the physician specializes
in the medical issue about which he opines, and (6) other
evidence such as whether the physician is familiar with the
claimant's case record.

To reject the uncontroverted opinion of a treating
physician, the ALJ must present clear and convincing reasons for
doing so.  *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 (9th Cir.
1989).  To reject the opinion of a treating physician that

11- OPINION AND ORDER

conflicts with another physician's opinion contained in the record the ALJ must give specific and legitimate reasons based on substantial evidence. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

### I.   Raymond Brumbaugh, M.D.

Turner claims that even if the ALJ properly rejected Dr. Brumbaugh's March 12, 2004 comment that Plaintiff was not able to work, still the ALJ "erred in not giving controlling weight to the remainder of Dr. Brumbaugh's opinion."  Turner fails to further elucidate this argument.

The ALJ thoroughly discussed Dr. Brumbaugh's opinions, but found that Brumbaugh credited Turner's unreliable subjective reports and approved of Turner's use of opiates and narcotic analgesics notwithstanding his history of drug addiction. Moreover, the ALJ found Dr. Brumbaugh's opinion that Turner was incapable of working to be inconsistent with his own treatment notes and other medical evidence in the record, and with Turner's demonstrated ability to complete a degree in computer science and work as a computer science lab technician.

I find these to be specific and legitimate reasons to discredit a contradicted treating physician's opinion. Accordingly, I reject Turner's claim that the ALJ erred by rejecting Dr. Brumbaugh's opinions.

### ii.  Carey Yuen, M.D.

Turner contends the ALJ erred by giving Dr. Yuen's opinions "no weight."  In support of his argument that the ALJ mistakenly concluded that Dr. Yuen failed to render "an acceptable degree of objective investigation into the nature, severity, frequency and origin of the claimant's alleged pain complaints," Turner states: (1) he had approximately 10 visits with Dr. Yuen between January 11, 2006 and June 28, 2006; (2) Dr. Yuen "prescribed and adjusted medication"; (3) Dr. Yuen "made clinical findings"; and,(4) Dr. Yuen had a counselor assess Turner's depression.  These points fail to address the ALJ's actual reasoning regarding Dr. Yuen.

First, since Turner commenced treatment with Dr. Yuen in February 2006, Dr. Yuen's opinion is not relevant to the period under review.  Second, after thoroughly discussing the chronology of Turner's relationship with Dr. Yuen, the ALJ found that Turner not only failed to report his history of drug addiction, he inaccurately reported to Dr. Yuen that he was "on disability," and inaccurately reported the dosage of his current prescriptions.  Dr. Yuen credited all of these inaccuracies, prescribed an even higher dosage of narcotic medication than Turner was already taking, acquiesced to Turner's request to be switched to the narcotic analgesic Fentanyl, and later accepted Turner's claims that he needed early refills of the Fentanyl

patches because they were pealing off easily.  Notwithstanding

that Dr. Yuen prescribed Turner the maximum allowable daily

cocktail of narcotics, he did not order any x-rays or scans and

or even review Turner's medical records to attempt to address the

underlying cause of Turner's pain.  While there is some

suggestion in his records that Dr. Yuen believed Turner's

subjective pain experience was attributable to depression, Turner

told Dr. Yuen he was not taking the Wellbutrin Dr. Yuen

prescribed and that he did not care to explore mental health

treatment.

For all these reasons, I find the ALJ reasonably concluded

that Dr. Yuen's opinion was not entitled to any weight.

**III. Residual Functional Capacity**

Turner claims the ALJ erred by "not including complete

functional limitations for [his] cervical and lumbar impairments,

carpal tunnel syndrome and depression."  With the exception of

his claim that all reaching with the right upper extremity should

have been precluded, Turner does not specify the exact

limitations he thinks the ALJ omitted.  Nor does he point to

medical evidence in support of a more restricted residual

functional capacity than the ALJ found for him.  Instead, he

cites records that he argues show he "complained" of pain and

stiffness in his neck and back, in addition to "hand problems

well before his date last insured," and that the ALJ "declined to allow Plaintiff the opportunity to keep the record open to present evidence" that Turner had been treated for depression after his DIB insurance lapsed on September 20, 2003.

The Commissioner avers that the ALJ included in Turner's RFC assessment all the work-related functional impairments supported by medical evidence pre-dating September 30, 2003, and that he properly declined to include in the record medical evidence post-dating September 30, 2003 because it was not probative of whether Turner became disabled on or before that date.

A claimant's RFC is an assessment of what he can still do despite his limitations.  SSR 96-8p.  RFC is used at step four of the sequential evaluation to determine whether a claimant is able to do his past relevant work, and at step five to determine whether he is able to do other work, considering his age, education, and work experience.  The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which his medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his capacity to do work.  *Id*.

15- OPINION AND ORDER

I concur with the Commissioner that the evidence post-dating the expiration of Turner's Title II insurance was not relevant to determining whether Turner met his burden of establishing that prior to September 30, 2003 he became unable to work for at least 12 continuous months, by reason of a medically determinable physical or mental impairment. *See* 42 U.S.C. § 423(d)(1)(A); *Weetman v. Sullivan,* 877 F. 2d 20, 21 n.1, 22 (9th Cir. 1989). Since there is not any evidence that Turner was even diagnosed with depression prior to September 30, 2003, I do not find error in the ALJ's decision to exclude medical records that reportedly show Turner was being treated for depression after this date. Accordingly, I affirm the ALJ's finding that Turner did not establish that he suffered any work-related functional limitations from depression prior to September 30, 2003.

Similarly, the ALJ found that despite Turner's complaints of hand numbness prior to September 30, 2003, he had normal motor function and worked as a computer technician using his hands throughout this period.  On September 9, 2003, he told his surgeon, Maurice Collada, M.D., who had performed Turner's cervical fusions, that he had not found a job following completion of his certificate program at Chemeketa because "the work force [was] somewhat hard to reenter with the current economics," not because cervical or hand problems prevented him

16- OPINION AND ORDER

from working.  Moreover, on this date Dr. Collada found Turner
had normal strength "with the exception of minor weakness of the
left interossei which is likely due to handedness."  Accordingly,
I do not find any merit to Turner's implicit argument that he
presented substantial evidence to support the conclusion that he
suffered a "handling" limitation prior to September 30, 2003.

As for Turner's work-related functional limitations related
to his right shoulder and spine impairments, I find the ALJ
properly credited the limitations, such as the need to avoid
overhead reaching, that were supported by the medical evidence
prior to September 30, 2003.

**IV.  Lay Witness Testimony**

According to Turner, the ALJ violated the law as set forth
in *Dodrill v. Shalala*, 12 F. 3d 915, 918-19 (9th Cir. 1993) by
disallowing Turner's wife, Yvonne Turner, to testify at the
hearing on May 7, 2004, and by failing to consider a third-party
"Function Report" she filled out on December 10, 2003.

As discussed above, the ALJ did not expressly disallow
Turner's wife from testifying.  The ALJ simply told Turner and
his counsel that it was not necessary for Turner's wife to
clarify Turner's confusion over dates because the record
contained the relevant dates.  Neither Turner nor his counsel
asked that Yvonne Turner be allowed to testify after Turner

completed his testimony, nor did they object to the ALJ's alleged refusal to allow her testimony.

The ALJ did not err by failing to consider Yvonne Turner's December 10, 2003 "Function Report," as it was not probative to the determination whether Turner was disabled on or before September 30, 2003. *Vincent ex rel. v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(ALJ need not discuss non-probative evidence).

**V.   Due Process**

Turner claims the ALJ "relied on evidence beyond the record" by consulting the "State Board of Nursing" regarding the status of Turner's nursing license.  This allegedly violated Turner's "due process rights" because he was "unable to rebut or argue the accuracy or significance of this evidence."

Due process requires notice and an opportunity to be heard. *The Board of Regents of State colleges et al v. Roth*, 408 U.S. 564, 570 n. 7 (1972).  Contrary to Turner's claim, he was given notice that the ALJ was considering evidence of the disciplinary action taken by the nursing board when the ALJ told him at the hearing that he was considering this evidence.  He was also given the opportunity to be heard.  Turner's contention that he is unable to speak to the accuracy of the nursing board evidence is peculiar given that he already confirmed the accuracy of this information.  Turner testified at the hearing that he had been

caught twice stealing prescription medication from his places of employment and as a result he was disciplined by the nursing board.  Turner said that before he had a chance to complete the nursing board's conditions for keeping his license after the second theft, he was involved in the alcohol-related vehicular assault, so he decided to allow his license to expire because he knew he would be going to prison and that the nursing board probably would not forgive the criminal conviction.

In light of the evidence that is before me, which directly rebuts any suggestion that Turner was unaware of the nursing board disciplinary action, and that Turner was not given an opportunity to be heard about it, I do not find any violation of Turner's due process rights.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 3__ day of March, 2008.

 /s/  Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge